# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNION PACIFIC RAILROAD COMPANY :
1400 Douglas Street :
Omaha, NE  68179 :
  :
   Plaintiff, :
  :
   v. :
  :  Civil Action No. 21-cv-05502
INTERNATIONAL ASSOCIATION OF SHEET :
METAL, AIR, RAIL AND TRANSPORTATION :
WORKERS – TRANSPORTATION DIVISION :
24950 Country Club Blvd., Suite 340 :
North Olmsted, OH 44070-5333 :
  :
   and :
  :
ROY DAVIS :
GENERAL CHAIRPERSON, GO-577 :
1776 Woodstead Court, Suite 202 :
Woodlands, TX 77380 :
  :
   and :
  :
LUKE EDINGTON :
GENERAL CHAIRPERSON, GO-953 :
5990 SW 28th Street, Suite F :
Topeka, KS 66614 :
  :
   and :
  :
SCOTT CHELETTE :
GENERAL CHAIRPERSON, GO-927 :
1101 ESE Loop 323, Suite 180 :
Tyler, TX 75701 :
  :
   and :
  :
TERRY DIXON :
GENERAL CHAIRPERSON, GO-569 :
12200 NW Ambassador Drive, Suite 236 :
Kansas City, MO 64163 :
  :

and                                           :
                                              :
BROTHERHOOD OF MAINTENANCE OF                 :
WAY EMPLOYES, DIVISION – IBT                  :
41475 Gardenbrook Road                        :
Novi, MI 48375                                :
                                              :
and                                           :
                                              :
BROTHERHOOD OF LOCOMOTIVE                      :
ENGINEERS AND TRAINMEN                         :
7061 East Pleasant Valley Road                :
Independence, OH 44131                         :
                                              :
                    Defendants.               :

## SECOND AMENDED COMPLAINT

This case arises out of an announcement by Plaintiff Union Pacific Railroad Company ("Union Pacific" or "Carrier") that it will comply with Executive Order No. 14042 issued by President Biden on September 9, 2021 and subsequent guidance issued by the President's Safer Federal Workforce Task Force ("Task Force") requiring all "covered employees" of federal contractors, including Union Pacific, to be fully vaccinated against the virus that causes COVID-19 no later than December 8, 2021 (referred to herein as the "Mandate").

In response to Union Pacific's announcement, the Defendant labor unions and the individually named union officers have expressed their opposition to Union Pacific's compliance with the Mandate and other actions Union Pacific has taken to encourage employees to be vaccinated as required by the Mandate, and to provide continuation of pay for employees who experience a "breakthrough" infection despite being vaccinated. Defendant International Association of Sheet Metal, Air, Rail and Transportation Workers – Transportation Division ("SMART-TD" or the "Union") and the four named General Chairpersons objected to Union Pacific's compliance with the Mandate using terms of art under the Railway Labor Act, 45

2

U.S.C. § 151, *et seq.* ("RLA") indicating they viewed such compliance as a "major dispute" under the RLA over which they claim to have the right to strike. In addition, while not threatening a strike, Defendants Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED") and Brotherhood of Locomotive Engineers and Trainmen ("BLET") objected in writing to Union Pacific's compliance with the Mandate.

After Union Pacific filed its original Complaint in this action, Defendants each filed lawsuits against Union Pacific which clarify the nature of those Unions' objections to Union Pacific's compliance with the Mandate. In their respective complaints, Defendants have challenged Union Pacific's compliance with the Mandate, and have asserted that the RLA precludes Union Pacific not only from complying with the Mandate itself, but also from providing a $300 incentive to employees who receive the vaccine, and to compensate employees who experience breakthrough infections.

Union Pacific now files this Second Amended Complaint, taking into account Defendants' filings. Through this Second Amended Complaint, Union Pacific seeks declaratory judgments that (1) the RLA does not prohibit Union Pacific from complying with the Mandate, (2) any disputes over Union Pacific's ability to comply with the requirements of the mandate, as well as the provision of additional or continued compensation to employees who receive a vaccination against COVID-19 or experience a breakthrough infection are "minor disputes" which must be resolved through the mandatory arbitration procedures prescribed in Section 3 of the RLA, 45 U.S.C. § 153, and (3) any demands for additional compensation beyond that provided by Union Pacific must be resolved through the ongoing "major dispute" resolution procedures set forth in Sections 2 Seventh, 6 and 10 of the RLA, 45 U.S.C. §§ 152 Seventh, 156 and 160.

## PARTIES

1.      Plaintiff Union Pacific Railroad Company ("Union Pacific") is a Class I railroad that provides freight transportation services in 23 States in the western half of the United States. Union Pacific is a Carrier within the meaning of the RLA, 45 U.S.C. § 151, First.  Union Pacific's headquarters building and principal place of business is 1400 Douglas Street, Omaha, Nebraska 68179.

2.      Defendant SMART-TD is an unincorporated labor organization in which employees participate and that exists for the purpose of, among other things, dealing with carriers pursuant to the RLA concerning rates of pay, rules and working conditions, including negotiation and administration of CBAs.  SMART-TD is a "representative" within the meaning of Section 1, Sixth of the RLA, 45 U.S.C. § 151, Sixth.  SMART-TD represents Union Pacific employees in the craft or class of "Conductors and Trainmen," which consists of Conductors, Brakemen and Switchmen.  SMART-TD was formerly known as the United Transportation Union ("UTU").

3.      The individually named General Chairpersons are named in their official capacities as agents and representatives of SMART-TD.

4.      Defendant BMWED is an unincorporated labor organization in which employees participate and that exists for the purpose of, among other things, dealing with carriers pursuant to the RLA concerning rates of pay, rules and working conditions, including negotiation and administration of CBAs.  BMWED is a "representative" within the meaning of Section 1, Sixth of the RLA, 45 U.S.C. § 151, Sixth.  BMWED represents Union Pacific employees in the craft or class of "Maintenance of Way Employees."

5.      Defendant BLET is an unincorporated labor organization in which employees participate and that exists for the purpose of, among other things, dealing with carriers pursuant

to the RLA concerning rates of pay, rules and working conditions, including negotiation and administration of CBAs. BLET is a "representative" within the meaning of Section 1, Sixth of the RLA, 45 U.S.C. § 151, Sixth. BLET represents Union Pacific employees in the craft or class of "Locomotive Engineers." BLET was formerly known as the Brotherhood of Locomotive Engineers ("BLE"). SMART-TD, BLET and BMWED are referred to herein as "the Unions."

## JURISDICTION AND VENUE

6.      Jurisdiction exists pursuant to the RLA, 45 U.S.C. §§ 151-188 and 28 U.S.C. §§ 1331, 1337.

7.      Venue over this action properly lies in this Judicial District pursuant to 28 U.S.C. §§1391(b)(1) and (2) because a substantial portion of the events giving rise to the claim took place in this Judicial District and Plaintiff operates within this Judicial District substantial rail properties that would be affected by any disruption to rail operations.

## THE RLA's DISPUTE RESOLUTION PROCEDURES

8.      The Unions represent Union Pacific employees in the RLA crafts and classes described above. Other labor unions represent Union Pacific employees in other crafts and classes. Union Pacific and the Unions are parties to multiple collective bargaining agreements. Under the RLA, collective bargaining agreements do not expire; they become "amendable" after the expiration of contractual "moratorium" agreements through which the parties agree not to seek changes to their agreements for specified periods of time.

9.      Section 2 First of the RLA, which has been described as the "heart of the Railway Labor Act," *Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 377-78 (1969), imposes an affirmative duty on the parties to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to

avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

10.      Union Pacific and the Unions have served notices upon each other under Section 6 of the RLA formally beginning the process that will lead to a new collective bargaining agreement.  Disputes over the negotiation of collective bargaining agreements are referred to as "major disputes" under the RLA.  In the current round of collective bargaining, Union Pacific is represented by a multi-employer bargaining association, the National Carriers' Conference Committee, for negotiation of certain subjects through national negotiations known as "national handling."

11.      Under the RLA, the parties are prohibited from exercising self-help such as strikes or lockouts, and are required to observe the status quo, during the mandatory negotiation process and, if requested by either party, mediation process conducted by the National Mediation Board ("NMB").  During the period after the parties have exchanged Section 6 notices and until a "release" from bargaining by the NMB, the parties have the duty to maintain the status quo and refrain from engaging in self-help including any strike, work stoppage or lockout under Sections 2 First and 6 of the RLA, 45 U.S.C. §§ 152 First and 156.

12.      The RLA provides a separate dispute resolution procedure for disputes concerning the interpretation or application of existing collective bargaining agreements, which are not resolved in conferences between the parties or through the parties' grievance procedures.  Such disputes, known as "minor disputes," are subject to mandatory arbitration.  Section 3 of the RLA requires such disputes to be resolved exclusively through arbitration before the National Railroad Adjustment Board ("NRAB"), or before an arbitration panel of coordinate jurisdiction established by the parties pursuant to the RLA (known as a Public Law Board or a Special Board

of Adjustment). 45 U.S.C. § 153. The characterization of a dispute as a "minor dispute" does

not reflect the importance or value of the dispute. Rather, the term "minor dispute" reflects that

the nature of the dispute is one over the interpretation or application of an existing agreement,

rather than a dispute over the formation or change to an agreement.

13. A union may not strike over a minor dispute. *Bhd. of R.R. Trainmen v. Chicago

R. & I.R.R. Co.*, 353 U.S. 30, 39-42 (1957).

14. Under the RLA, a dispute is a "minor dispute" subject to mandatory arbitration so

long as the rail carrier's position with respect to the merits of the dispute is not "frivolous or

obviously insubstantial." *Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n.*, 491 U.S.

299, 303-05 (1989).

**DISPUTE CONCERNING COMPLIANCE WITH THE MANDATE**

15. On September 9, 2021, President Biden issued Executive Order No. 14042 titled,

"Ensuring Adequate COVID Safety Protocols for Federal Contractors." *See* 86 Fed. Reg. 50985

(Sept. 14, 2021). The Executive Order requires all federal contractors to comply with all

guidance published by the Task Force regarding the COVID-19 pandemic, and set a deadline of

September 24, 2021 for the Task Force to issue such guidance.

16. On September 24, 2021, the Task Force issued the guidance required by the

Executive Order. The Task Force guidance requires all "covered employees" of federal

contractors to be fully vaccinated against the virus that causes COVID-19 no later than

December 8, 2021.

17. Also on September 24, 2021, the Director of the Office of Management and

Budget issued a "Determination of the Promotion of Economy and Efficiency in Federal

Contracting Pursuant to Executive Order No. 14042," finding that "compliance with the COVID-

19 workplace safety protocols detailed in that guidance will improve economy and efficiency by

7

reducing absenteeism and decreasing labor costs for contractors and subcontractors working on or in connection with a Federal Government contract." *See* 86 Fed. Reg. 53691, 53692 (Sept. 28, 2021).

18.     Union Pacific is a federal contractor subject to the Executive Order and the guidance issued by the Task Force.  Union Pacific is also a subcontractor to entities that have a prime contract with the federal government, and it is also a common carrier under the Interstate Commerce Act.

19.     On October 11, 2021, Union Pacific announced it will comply with the Mandate and so advised the Defendants and other labor organizations representing Union Pacific employees.  Union Pacific's compliance with the Mandate is underway and ongoing.

20.     On October 12, 2021, the four named General Chairpersons sent a letter to Union Pacific on behalf of SMART-TD in which they stated that SMART-TD opposed Union Pacific's efforts to comply with the vaccine Mandate.  A copy of that October 12, 2021 letter is attached hereto as Exhibit A.  In that letter, SMART-TD stated that it "strongly disagrees with Carrier's action to unilaterally require a vaccination as a condition of employment."  SMART-TD further advised Union Pacific that SMART-TD's position is that Union Pacific's effort to comply with the Mandate "does not meet the standards as contained in the Railway Labor Act."  SMART-TD asserted that Union Pacific cannot take the actions described in Union Pacific's letter until completion of the RLA bargaining process.  SMART-TD further stated that SMART-TD opposed "any changes to the requirements for employment by the members represented by SMART-TD."  Finally, SMART-TD threatened that if Union Pacific "unwisely decides to continue this or similar activities, this Organization will exercise its full rights under the law."

21.     On October 1, 2021, BMWED sent a letter to Union Pacific's Chairman and CEO protesting any effort to comply with the Mandate, saying, "The railroads that are actively enforcing COVID-19 Vaccine mandates will be opposed.  All necessary action will be taken to prevent such Vaccine Mandates …"  A copy of that letter is attached as Exhibit B.  On October 14, 2021, BMWED sent a letter to its members emphasizing that the Union is "preparing for all necessary action that can be legally taken to stop the unprecedented mandates."  A copy of that letter is attached as Exhibit C.

22.     BMWED's General Chairman, Tony Cardwell, has informed Union Pacific's Labor Relations Department that while BMWED is aware of and will comply with its obligation to provide ten (10) days' notice of any planned strike action (*see Burlington N. & Santa Fe Ry. v. Maintenance of Way Employees*, 143 F. Supp. 2d 672 (N.D. Tex. 2001), it remains opposed to and will continue to protest Union Pacific's compliance with the Mandate.  BMWED previously served Union Pacific with a Section 6 notice specifically seeking to bargain over the impact of the COVID-19 pandemic on its members.

23.     On October 4, 2021, BLET wrote to Union Pacific regarding its implementation of a supplemental pay program ("SPP") for employees who have been vaccinated, but experience a "breakthrough COVID-19 infection due to workplace exposure."  A copy of that letter is attached as Exhibit D.  In that letter, BLET demanded: "Prior to any action being taken by the Carrier to impose a vaccination mandate," Union Pacific must "meet and discuss the terms of any policies or mandates to be issued to Carrier employees represented by the BLET, to the extent that such terms are not already dictated by an external authority."

24.     On October 15, 2021, SMART-TD filed a lawsuit against Union Pacific in the Northern District of Illinois asserting that Union Pacific's compliance with the Mandate violated

the RLA, that Union Pacific's plan to medically disqualify employees who failed to get vaccinated as required by the Mandate violated Union Pacific's obligations to bargain over changes to the parties' collective bargaining agreements, and that offering a $300 incentive payment to employees to encourage them to become vaccinated constituted direct dealing in violation of the RLA.  A copy of SMART-TD's Amended Complaint is attached as Exhibit E.

25.     On October 15, 2021, BLET also filed suit against Union Pacific in the Northern District of Illinois asserting that Union Pacific violated the RLA by imposing a vaccine mandate, by offering a $300 incentive to employees to become vaccinated, and by offering the SPP to vaccinated employees who experience a breakthrough infection due to workplace exposures.  A copy of BLET's Complaint is attached as Exhibit F.  Despite previously acknowledging the need to comply with "terms dictated by an external authority,"  BLET's Complaint makes no mention of the Executive Order or Task Force Guidance imposing the Mandate, but challenges Union Pacific's "unilateral implementation of its vaccine mandate."

26.     On October 25, 2021, BMWED filed suit against Union Pacific in the Northern District of Illinois.  A copy of BMWED's complaint is attached as Exhibit G.  Like SMART-TD and BLET, BMWED's complaint alleges that Union Pacific's compliance with the Mandate is a violation of the RLA, and challenges Union Pacific's implementation of the SPP and the offer of incentive payments to employees who receive a COVID-19 vaccine.

27.     Union Pacific has informed Defendants that it remains willing to meet with them to discuss any concerns related to Union Pacific's compliance with the Mandate for federal contractors.

## COUNT I – DECLARATION THAT UNION PACIFIC'S COMPLIANCE WITH THE MANDATE IS A NON-MANDATORY SUBJECT OF BARGAINING
### (All Defendants)

28.     Union Pacific incorporates by reference as if fully set forth herein each of the preceding paragraphs of this Second Amended Complaint.

29.     This Cause of Action arises under Sections 2 First, 2 Seventh and 6 of the Railway Labor Act, 45 U.S.C. §§152 First, 152 Seventh, 156, and is brought against all Defendants.

30.     Compliance with the Mandate is not a mandatory subject of collective bargaining; it is a legal obligation.  To the extent that any collective bargaining agreement contains provisions contrary to Union Pacific's efforts to comply with the Mandate, they are not enforceable as a matter of law.

31.     Notwithstanding the legal effect of the Mandate, Defendants have challenged Union Pacific's compliance with the Mandate itself.  The correspondence and lawsuits filed by Defendants directly challenge Union Pacific's ability to require employees to be vaccinated in accordance with the Mandate without first engaging in bargaining under the RLA.

32.     A live and ripe controversy exists as to whether Union Pacific may comply with the requirements dictated by the Mandate without first bargaining with Defendants under the RLA.

33.     Union Pacific has been willing at all times to comply with its duties under the RLA and has exercised and is continuing to exercise reasonable efforts to resolve this dispute with Defendants.

### COUNT II – MINOR DISPUTE
### COMPLIANCE WITH GOVERNMENT MANDATES
#### (All Defendants)

34.     Union Pacific incorporates by reference as if fully set forth herein each of the preceding paragraphs of this Second Amended Complaint.

LEGAL\54829122\2

35.     This Cause of Action arises under Sections 2 First and 3 of the Railway Labor Act, 45 U.S.C. §§152 First, 153, and is brought against all Defendants.

36.     Union Pacific has collective bargaining agreements with SMART-TD, BLET and BMWED which remain in full force and effect.  These agreements, together with terms implied therein by virtue of established practices and retained managerial prerogatives, set forth the terms and conditions of employment of Union Pacific's employees represented by the Defendant Unions.

37.     A live and ripe controversy exists between the parties as to whether an implied term of Union Pacific's collective bargaining agreements with Defendants permits Union Pacific to comply with the requirements of the Mandate without first bargaining with Defendants.

38.     Union Pacific has a long history of taking unilateral action to comply with various federal government mandates that may be inconsistent with its existing collective bargaining agreements with Defendants, including changes to the Hours of Service laws, Federal Railroad Administration ("FRA") regulations requiring certification of Conductors and Locomotive Engineers, and requirements for drug and alcohol testing of employees.  Union Pacific implemented these changes without bargaining with any unions.

39.     It is Union Pacific's position that an implied term of its agreements with Defendants permits Union Pacific to comply with any requirements mandated by federal laws, rules or regulations that may be inconsistent with those agreements, without first bargaining with Defendants.  Union Pacific's position is supported by decades of past practice, and is, at a minimum, not frivolous or obviously insubstantial.

40.     The dispute between Union Pacific and Defendants over whether an implied term of the parties' agreements permits Union Pacific to comply with the requirements established by

the Mandate is a minor dispute under the RLA, which must be resolved through arbitration under Section 3 of the Act, 45 U.S.C. § 153.

41.     Union Pacific has at all times been willing to comply with the procedures of the RLA and has exercised and is continuing to exercise reasonable efforts to resolve this dispute with Defendants.

## COUNT III – MINOR DISPUTE
## FITNESS FOR DUTY STANDARDS
### (All Defendants)

42.     Union Pacific incorporates by reference as if fully set forth herein each of the preceding paragraphs of this Second Amended Complaint.

43.     This Cause of Action arises under Sections 2 First and 3 of the Railway Labor Act, 45 U.S.C. §§152 First, 153, and is brought against all Defendants.

44.     Union Pacific has collective bargaining agreements with SMART-TD, BLET and BMWED which remain in full force and effect.  These agreements, together with terms implied therein by virtue of established practices and retained managerial prerogatives, set forth the terms and conditions of employment of Union Pacific's employees represented by the Defendant Unions.

45.     A live and ripe controversy exists between the parties as to whether an implied term of Union Pacific's collective bargaining agreements with Defendants permits Union Pacific to establish fitness for duty standards, including the right to disqualify employees who refuse to comply with the requirements of the Mandate that they be fully vaccinated against COVID-19 no later than December 8, 2021.

46.     Defendants maintain that Union Pacific's compliance with the Mandate, including its plan to disqualify employees who refuse to comply with the Mandate, violates their agreements.  Union Pacific disputes that claim, and maintains that an implied term of its

13

agreements with the Defendant Unions allows Union Pacific to set fitness for duty standards for employees, which Union Pacific has done numerous times over the course of decades without objection from the Defendant Unions. It is Union Pacific's position that its implied right to set fitness for duty standards includes the right to require employees to comply with the requirements of the Mandate and to disqualify those who fail to comply. Union Pacific's position is supported by decades of past practice, and is, at a minimum, not frivolous or obviously insubstantial.

47. The dispute between Defendants and Union Pacific as to whether Union Pacific's right to set fitness for duty standards includes the right to comply with the Mandate and to medically disqualify employees who refuse to comply is a minor dispute under the RLA, which must be resolved through arbitration under Section 3 of the Act, 45 U.S.C. § 153.

48. Union Pacific has at all times been willing to comply with the procedures of the RLA and has exercised and is continuing to exercise reasonable efforts to resolve this dispute with Defendants.

## COUNT IV – MINOR DISPUTE
## EXTRA-CONTRACTUAL PAYMENTS
### (All Defendants)

49. Union Pacific incorporates by reference as if fully set forth herein each of the preceding paragraphs of this Second Amended Complaint.

50. This Cause of Action arises under Sections 2 First and 3 of the Railway Labor Act, 45 U.S.C. §§152 First, 153, and is brought against all Defendants.

51. Union Pacific has collective bargaining agreements with Defendants which remain in full force and effect. These agreements, together with terms implied therein by virtue of established practices and retained managerial prerogatives, set forth the terms and conditions of employment of Union Pacific's employees represented by the Defendant Unions.

14

52.     A live and ripe controversy exists between the parties as to whether an implied term of Union Pacific's collective bargaining agreements with Defendants permits Union Pacific to provide a $300 incentive to comply with the Mandate, or to temporarily protect the compensation of employees who are unable to work due to a breakthrough infection after being fully vaccinated as a result of a workplace exposure.

53.     Defendants maintain that Union Pacific's offer of a $300 incentive payment to employees to be vaccinated against COVID-19 violates the parties' collective bargaining agreement because no provisions of the parties' agreements specifically authorizes such a payment. BLET and BMWED similarly maintain that Union Pacific cannot protect the earnings of employees who experience a breakthrough infection as provided under the SPP because no provision of their agreements with Union Pacific authorizes such a program.

54.     Union Pacific disputes these claims and maintains that it has a long history of providing safety incentive payments and other extra-contractual compensation to individual employees who meet certain safety-related or performance goals without negotiating with the Unions over such payments. Likewise, Union Pacific has a history of protecting the earnings of employees who are temporarily unable to work due to a variety of reasons, including the need to quarantine as a result of a COVID-19 exposure, involvement in a "Critical Incident" such as an accident, or as a result of various natural disasters. None of these initiatives were bargained with any unions.

55.     It is Union Pacific's position that these established practices have created an implied term in its agreements permitting it to make incentive payments and to establish programs protecting the regular earnings of employees when they are temporarily unable to

15

work. Union Pacific's position is supported by decades of past practice, and is, at a minimum, not frivolous or obviously insubstantial.

56.     The disputes between Union Pacific and Defendants over its offer of a $300 payment as an incentive to become vaccinated and its establishment of the SPP are minor disputes under the RLA, which must be resolved through arbitration under Section 3 of the Act, 45 U.S.C. § 153.

57.     Union Pacific has at all times been willing to comply with the procedures of the RLA and has exercised and is continuing to exercise reasonable efforts to resolve this dispute with Defendants.

## COUNT V – DECLARATION THAT EFFECTS BARGAINING OBLIGATIONS DO NOT PRECLUDE UNION PACIFIC FROM COMPLYING WITH THE MANDATE (SMART-TD)

58.     Union Pacific incorporates by reference as if fully set forth herein each of the preceding paragraphs of this Second Amended Complaint.

59.     This Cause of Action arises under Sections 2 First, 2 Seventh and 6 of the Railway Labor Act, 45 U.S.C. §§152 First, 152 Seventh, 156, and is brought against all Defendants.

60.     SMART-TD has taken the position that Union Pacific has violated its obligation to engage in bargaining over the effects of its compliance with the requirements of the Mandate.

61.     A live and ripe controversy exists as to whether Union Pacific has complied with its obligation to engage in effects bargaining over its compliance with the Mandate, and whether Union Pacific may proceed to comply with the Mandate without first exhausting the bargaining process of the effects of such compliance.

62.     The RLA does not require a rail carrier, like Union Pacific, to delay taking action with regard to a non-mandatory subject of bargaining, such as compliance with the Mandate,

16

until effects bargaining is complete, and precludes the issuance of injunctive relief against such actions pending completion of effects bargaining. *See Pittsburgh & Lake Erie R.R. Co. v. Railway Labor Execs.' Ass'n*, 491 U.S. 490, 503-504 (1989).

## COUNT VI – MAJOR DISPUTE
### (All Defendants)

63.     Union Pacific incorporates by reference as if fully set forth herein each of the preceding paragraphs of this Second Amended Complaint.

64.     This Cause of Action arises under Sections 2 First and 6 of the RLA, 45 U.S.C. §§152 First, 156, and is brought against all Defendants.

65.     Union Pacific and the Unions are currently engaged in bargaining for new collective bargaining agreements. The parties have not been released from bargaining by the NMB.

66.     While the parties are engaged in the bargaining process, the RLA requires the parties to maintain the status quo and prohibits the Unions from engaging in self-help.

67.     While BMWED has acknowledged its obligation to provide Union Pacific with ten (10) days' notice of any strike action, there remains a live and ripe controversy over whether Union Pacific is obligated to bargain with BMWED regarding compliance with the Mandate.

68.     Moreover, BMWED has specifically demanded that Union Pacific provide its members with additional compensation, time off or other benefits not contained in existing collective bargaining agreements in connection with the COVID-19 pandemic. Those demands remain subject to the major dispute resolution procedures set forth in the RLA, and any actions by BMWED to resolve their demands for compensation and other benefits, or to otherwise protest Union Pacific's compliance with the Mandate outside the Section 6 bargaining process would violate the Union's obligation to maintain the status quo.

69.     BLET and SMART-TD have similarly advised Union Pacific that they do not presently intend to strike Union Pacific over its compliance with the Mandate, but there remains a live and ripe controversy over whether Union Pacific is obligated to bargain with BLET and SMART-TD regarding compliance with the Mandate.  Moreover, BLET and SMART-TD have demanded that Union Pacific bargain with them over various subjects related to compliance with the mandate including issues such as compensation for employees for testing and time getting vaccinated.  Those demands remain subject to the major dispute resolution procedures set forth in the RLA, and any actions by BLET and SMART-TD to resolve their demands for compensation and other benefits, or to otherwise protest Union Pacific's compliance with the Mandate outside the Section 6 bargaining process would violate the Union's obligation to maintain the status quo.

70.     Union Pacific has at all times been willing to comply with the mandatory collective bargaining procedures of the RLA and has exercised and is continuing to exercise all reasonable efforts to resolve this dispute with BMWED.

## PRAYER FOR RELIEF

WHEREFORE, Union Pacific respectfully requests that the Court grant the following relief:

1.     Issue a Judgment declaring that the present dispute concerning Union Pacific's compliance with the Mandate involves a non-mandatory subject of bargaining over which Union Pacific has no obligation to bargain.

2.     Issue a Judgment declaring that Union Pacific is not required to delay compliance with the Mandate pending exhaustion of the bargaining process under the RLA as to the effects of such compliance on employees represented by Defendants.

3. Issue a Judgment declaring that the disputes with Defendants involving Union Pacific's rights to comply with the Mandate, set standards for fitness for duty, disqualify employees who refuse to comply with the Mandate, provide incentive payments to employees to encourage them to be vaccinated, and to establish the SPP for employees who experience breakthrough infections due to a workplace exposure are minor disputes under the RLA, and are subject to the compulsory and exclusive arbitration mechanisms set forth in section 3 of the RLA, 45 U.S.C. § 153;

4. Issue a Judgment declaring that the Unions must resolve any disputes over Union Pacific's compliance with the Mandate and the Unions' demands for additional compensation and other benefits for their members must be resolved exclusively through the bargaining process under Section 6 of the RLA;

5. Order Defendants to pay the costs of these proceedings, including reasonable attorneys' fees; and

6. Grant Union Pacific such other and further relief as the Court may deem proper and just in the circumstances.

19

Respectfully submitted,

*/s/ Andrew J. Rolfes*
ROBERT S. HAWKINS
ANDREW J. ROLFES
**COZEN O'CONNOR**
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-2015
(646) 461-2097 (fax)
rhawkins@cozen.com
arolfes@cozen.com

Jeremy Glenn
123 North Wacker Drive, Suite 1800
Chicago, IL   60606
(312) 474-7981 (phone)
(312) 706-9791 (fax)
Jglenn@cozen.com

Attorneys for Plaintiff
UNION PACIFIC RAILROAD COMPANY

Date:  November 9, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 9, 2021, I caused a true and correct copy of the

foregoing Second Amended Complaint to be served upon all counsel of record via the Court's

electronic filing system.

*/s/ Andrew J. Rolfes*
Andrew J. Rolfes

21