IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNION PACIFIC RAILROAD COMPANY, *et al.* | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. 1:21-CV-05502 |
| INTERNATIONAL ASSOCIATION OF SHEET | : | |
| METAL, AIR, RAIL AND TRANSPORTATION | : | |
| WORKERS – TRANSPORTATION DIVISION, | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | |

**UNION PACIFIC RAILROAD COMPANY'S
SUR-REPLY BRIEF IN OPPOSITION TO
DEFENDANTS' MOTIONS FOR PRELIMINARY INJUNCTION**

I.      INTRODUCTION

Union Pacific Railroad Company ("Union Pacific") submits this Sur-Reply Brief in

opposition to the Motions for Preliminary Injunction filed by Defendants Brotherhood of

Locomotive Engineers and Trainmen ("BLET") and International Association of Sheet Metal,

Air, Rail and Transportation Workers – Transportation Division ("SMART-TD") (collectively

the "Unions"). As demonstrated below, the arguments raised by the Unions in their Reply

Briefs, including new arguments that should have been raised in their principal briefs, fail to

establish that they are entitled to injunctive relief prohibiting Union Pacific from complying with

the vaccine mandate for federal contractors issued by the Biden Administration.[1]

---

[1] Executive Order No. 14042, "Ensuring Adequate Safety Protocols for Federal Contractors", 86
Fed. Reg. 50985 (Sept. 14, 2021) (the "Mandate"). In this Sur-Reply Brief, Union Pacific uses
the same defined terms as in its principal brief.

II.     ARGUMENT

        A.     Union Pacific Is A Federal Contractor Subject To The Mandate.

While BLET does not dispute Union Pacific's status as a federal contractor subject to the requirements of the Mandate, SMART-TD continues to maintain that neither Union Pacific nor Norfolk Southern Railway Company ("Norfolk Southern") falls within the scope of the Mandate due to an exemption in the Service Contract Act, which excludes from its coverage contracts for carriage of freight "where published tariff rates are in effect." *See* 41 U.S.C. § 6702(b)(3). In response to that argument, Union Pacific submitted a Supplemental Declaration from Jacqueline Bendon, its Vice President of Marketing & Sales – Industrial explaining that Union Pacific's contracts with the Department of Defense do not involve "published tariff rates," but instead include rates set through individual bids that are accepted by the contracting agency. Ms. Bendon also attached a sample solicitation form from the Military Surface Deployment and Distribution Command showing that Union Pacific submits a separate rate as part of each bid. (ECF#55-1 at ¶ 4 and Ex. A). Ms. Bendon further explained that Union Pacific is a subcontractor "for literally hundreds of other federal contractors," and attached a contract modification from one of those contractors incorporating the requirements of the vaccine Mandate. (*Id.* at ¶ 7 and Ex. C).

Neither SMART-TD nor BLET submitted any evidence to rebut Ms. Bendon's sworn Declaration. Instead, SMART-TD argues that Union Pacific made only a "bald assertion" that it is federal contractor, and that it needs discovery in order to respond. (ECF# 58 at 4-5). Contrary to SMART-TD's argument, Ms. Bendon's Declaration provides sworn testimony, supported by exhibits, demonstrating that Union Pacific is, in fact, a federal contractor and subcontractor subject to the requirements of the Mandate. Because the Unions have failed to present any

2

evidence to the contrary, SMART-TD's argument that Union Pacific is not a covered contractor must be rejected.

B.    Compliance With The Mandate Is Not A Mandatory Subject Of Bargaining.

In its principal brief, BLET argued at length that compliance with the Mandate is a mandatory subject of bargaining because Union Pacific could simply choose to no longer contract with the federal government.  (ECF#41-1 at 8-11).  Because that argument is disposed of by the Supreme Court's decision in *First Nat'l Maint. Corp. v. NLRB*, 452 U.S. 666, 676 (1981), which held that the identity of other entities with which an employer chooses to do business is a core entrepreneurial decision over which the employer has no obligation to bargain, BLET's Reply Brief changes gears and argues that requiring employees to be vaccinated falls within those decisions that affect "an aspect of the relationship between employer and employees" over which an employer must bargain under *First National Maintenance*. (ECF#57 at 5-6).  This "bait and switch" argument by BLET should be rejected.

BLET's argument simply ignores the fact that the Mandate requires all covered contractors, like Union Pacific, to comply with the requirement that employees be vaccinated. For the reasons explained in Union Pacific's principal brief, compliance with that requirement is not a subject over which Union Pacific has to bargain, and it is unquestionably not a subject that is amenable to bargaining.  Simply put, if the Mandate requires Union Pacific to ensure its employees are vaccinated, then Union Pacific must comply with that requirement.[2]  Furthermore,

---

[2] The fact that the Mandate itself has been preliminarily enjoined in Kentucky, Tennessee and Ohio (*see Kentucky v. Biden*, 2021 WL 5587446 (E.D.Ky. Nov. 30, 2021)) does not affect Union Pacific's ability and need to comply with the Mandate in other states where it operates, including Illinois.  Unless and until the Mandate is enjoined throughout Union Pacific's service area, Union Pacific remains obligated to comply with it.  Moreover, as demonstrated herein and in Union Pacific's principal brief, Union Pacific has the right to require vaccination of employees consistent with its past practice of setting fitness for duty standards irrespective of the outcome of any litigation involving the President's authority to issue the Mandate.

LEGAL\55384191\2

Union Pacific's history of complying with other government mandates more than suffices to establish that it is at least arguable that an implied term of its agreements with the Unions allows it to do so here so that any dispute over compliance with the Mandate is a minor dispute under the RLA. *See Consolidated Rail Corp. v. Railway Labor Exec's. Ass'n*, 491 U.S. 299, 303, 307 (1989) ("*Conrail*"); *BLET GCA UP v. Union Pacific R.R. Co.*, 988 F.3d 409, 412 (7th Cir. 2021) ("*BLET GCA UP*"); *Brotherhood of Loc. Eng'rs and Trainmen v. Union Pacific R.R. Co.*, 879 F.3d 754, 756, 758 (7th Cir. 2017) (*"BLET v. UP"*); *Railway Labor Exec's. Ass'n v. Norfolk & Western Ry. Co.*, 833 F.2d 700, 704, 707 (7th Cir. 1987)("*RLEA v. N&W*").

> C.      Any Dispute Over Union Pacific's Compliance With The Mandate Is A Minor Dispute Under The RLA.

Relying on the Seventh Circuit's decision in *RLEA v. N&W*, BLET argues that compliance with the Mandate's requirement that employees be vaccinated constitutes such a "drastic change" from the parties' past practices that this case presents a major dispute, and therefore, the Unions are entitled to an injunction. (ECF#57 at 8-9). Contrary to BLET's argument, the standard for determining whether a dispute is major or minor under the RLA is not whether a party claims that a particular change can be characterized as "drastic." Under the RLA, a dispute is a minor dispute so long as the railroad's position that it has the right to make the disputed change is arguably justified by the parties' agreement, and is not "frivolous or obviously insubstantial." *Conrail*, 491 U.S. at 307; *RLEA v. N&W*, 833 F.2d at 704, 707. In that regard, it is well-settled that collective bargaining agreements under the RLA "include implied terms defined by 'the parties' practice, usage and custom as they carry out their agreement.'" *BLET GCA UP*, 988 F.3d at 413 (*quoting BLET v. UP*, 879 F.3d at 758).

In this case, there are two separate and independent bases for finding that Union Pacific's compliance with the Mandate is a minor dispute that must be resolved in arbitration under the

RLA.  First, Union Pacific has submitted evidence that it has a long history of complying with other federal mandates, including changes in the Hours of Service Act.  (ECF#39 at ¶¶ 27-28).  The Unions do not dispute that history.  Instead, SMART-TD argues that many of those changes in federal requirements were "lobbied for by the Unions."  (ECF#58 at 5).  Even if that is true, those changes in federal requirements still resulted in operational changes that conflicted with existing collective bargaining agreements, and those operational changes were not bargained with the Unions.  (ECF#39 at ¶¶ 27-28).  Thus, Union Pacific has an undisputed history of making unilateral changes to comply with new federal requirements.  Under binding Supreme Court and Seventh Circuit precedent, such a history is more than enough to satisfy Union Pacific's burden of establishing that it is at least arguable that an implied term of its agreements with the Unions permits it to act unilaterally to comply with the Mandate.  *See Conrail*, 491 U.S. at 303, 307; *RLEA v. N&W*, 833 F.2d at 705.

Second, irrespective of its past practice of taking unilateral action to comply with federal mandates, Union Pacific also has an equally well-established history of unilaterally setting and modifying fitness for duty requirements.  (ECF#39 at ¶ 29).  Again, the Unions do not seriously contest that Union Pacific has acted unilaterally to set fitness for duty standards.  However, BLET argues that compliance with the Mandate is qualitatively different because of the potential side effects of what BLET admits are "largely safe and effective" vaccines, and what it characterizes as "oppressive legal immunity" for vaccine manufacturers."  (ECF#57 at 9-12).[3]

---

[3] BLET's argument regarding the side effects of the COVID-19 vaccines and the limitations on the ability to recover damages for adverse reactions to those vaccines was improperly raised for the first time in its Reply Brief, and should be rejected for this reason alone.  "It is well-settled that new arguments cannot be made for the first time in a reply brief. … This goes for new facts too."  *Gold v. Wolpert*, 876 F.2d 1327, 1331 n.6 (7th Cir. 1989).

LEGAL\55384191\2

Rail labor made the same sort of arguments in opposition to railroad carriers' institution

of mandatory drug testing in the late 1980s in *Conrail* and *RLEA v. N&W*. In both of those

cases, rail labor argued that addition of drug testing to routine physical examinations was a

drastic, unprecedented departure from prior practice, and therefore, created a major dispute under

the RLA. *See Conrail*, 491 U.S. at 315-317; *RLEA v. N&W*, 833 F.2d at 706. In particular, the

unions argued, *inter alia*, that drug testing intruded into employees' private, off-duty conduct in

a way that prior medical examinations did not. *Id.* The Supreme Court and the Seventh Circuit

disagreed, holding that while the unions' arguments might carry the day in arbitration, they were

insufficient to hold that the railroad's position based on past practice was "frivolous or obviously

insubstantial." *Conrail*, 491 U.S. at 317-318; *RLEA v. N&W*, 833 F.2d at 706-707.

The same analysis applies here. Union Pacific's position that it has the right to set fitness

for duty standards, including a requirement that employees be vaccinated in compliance with the

Mandate, is supported by a long history of unilaterally changing those standards. That is all that

is required to meet the "low bar" of establishing a non-frivolous basis for its position to

demonstrate that this case involves a minor dispute under the RLA that must be resolved in

arbitration. *See Conrail*, 491 U.S. at 320; *RLEA v. N&W*, 833 F.2d at 707; *BLET GC UP*, 988

F.3d at 414.

It is no answer for the Unions to argue, as SMART-TD does at pages 9 to 10 of its Reply

Brief (ECF#58 at 9-10), that the railroads' argument is "akin to managerial prerogative

arguments that carriers have unsuccessfully advanced in the past," and that the parties'

agreements in this case "are devoid of a broad-based management rights clause" similar to that

discussed in the recent decision in *Southwest Pilots Ass'n v. Southwest Airlines Co.*, 2021 WL

4975010 (N.D. Tex. Oct. 26, 2021). In this case, it is not necessary for Union Pacific to point to

6

a broad-based management rights clause.  Union Pacific's position is based on its established

practices of making unilateral changes to comply with federal mandates and to set fitness for

duty standards.  As the Seventh Circuit emphasized in *RLEA v. N&W*, "Within the railroad

industry in particular, it is common practice to omit from written agreements non-essential

practices that are acceptable to both parties."  *RLEA v. N&W*, 833 F.2d at 705.  Because Union

Pacific has presented evidence of such past practices, the parties' dispute in this case must be

resolved in arbitration.  On this point, the Seventh Circuit has repeatedly explained, "Wading

through the competing declarations to determine the actual authority the Railroad had to modify

… policies based on past practices, is a job for the arbitrator."  *BLET GCA UP*, 988 F.3d at 414

(*quoting BLET v. UP*, 879 F.3d at 759).

SMART-TD's argument that its agreements provide a means for challenging fitness for

duty determinations also is misplaced.  That process has no application where, as here,

compliance with a vaccination requirement cannot be disputed by either the employee's or the

railroad's physicians.  Moreover, it is well recognized that Union Pacific has a "preexisting right

under the CBA to hold employees out of service, in this case due to illness or exposure to

COVID-19.  This is not a new right or change to the status quo which would violate the RLA."

*Union Pac. R.R. Co. v. Brotherhood of Maint. of Way Empl. Div./IBT*, 511 F. Supp. 3d 987,

1000 (D. Neb. 2021).

        D.      The Obligation To Bargain Over Effects Of Implementing The Mandate Does Not Support Issuance Of An Injunction Prohibiting Compliance With The Mandate.

SMART-TD acknowledges that the Seventh Circuit has held that a railroad need not

delay implementation of a decision while bargaining over the effects of that decision.  (ECF#58

at 13-14) (*citing Chicago & N.W. Transp. Co. v. Railway Labor Execs' Ass'n*, 908 F.2d 144,

152-153 (7th Cir. 1990) and *Railway Labor Execs' Ass'n v. Chicago & N.W. Transp. Co.*, 890

F.2d 1024, 1026 (8th Cir. 1989)). However, SMART-TD then asserts that effects bargaining is a major dispute and the status quo must be maintained during such a major dispute. (*Id.*). To the extent that SMART-TD argues that any obligation to bargain effects requires an injunction prohibiting Union Pacific from complying with the Mandate, the case law cited in its own brief demonstrates that its argument is simply wrong.

Moreover, to the extent that SMART-TD is arguing that the obligation to bargain effects precludes Union Pacific from implementing either the $300 incentive payment for employees to get vaccinated or the Supplemental Pay Plan ("SPP") to protect the pay of vaccinated employees who experience breakthrough infections due to workplace exposures, that argument also is wrong. As demonstrated in Union Pacific's principal brief, Union Pacific has an established practice of providing extra-contractual incentive payments to employees in a variety of circumstances, as well as a practice of protecting the pay of employees affected by natural disasters, including the COVID-19 pandemic. (ECF#39 at ¶¶ 30-40). Under the case law discussed above, any dispute about Union Pacific's provision of such incentive payments or the SPP is a minor dispute. And, it is well-established that while a minor dispute is being arbitrated, Union Pacific is entitled to act in accordance with its position. *Burlington N. R.R. Co. v. United Transp. Union*, 862 F.2d 1266, 1272 (7th Cir. 1988)("the carrier may act unilaterally until told to do otherwise by the arbitration board's decision"); *BLET v. UP*, 879 F.3d at 758 ("Critically, a minor change may take effect immediately, even if it must later be undone by order of the arbitrator).

III.    CONCLUSION

        For the foregoing reasons and the reasons set forth in Union Pacific's principal brief

(ECF#55), the Motions for Preliminary Injunction filed by BLET and SMART-TD should be

denied, and these consolidated cases should be dismissed for lack of subject matter jurisdiction.


Respectfully submitted,

*/s/ Matthew DiCianni*
JEREMY J. GLENN                                        ROBERT S. HAWKINS
MATTHEW DICIANNI                                       ANDREW J. ROLFES

COZEN O'CONNOR                                         COZEN O'CONNOR
123 North Wacker Drive, Suite 1800                     One Liberty Place
Chicago, IL   60606                                    1650 Market Street, Suite 2800
(312) 474-7981 (phone)                                 Philadelphia, PA 19103
(312) 706-9791 (fax)                                   (215) 665-2015
jglenn@cozen.com                                       (646) 461-2097 (fax)
mdicianni@cozen.com                                    rhawkins@cozen.com
                                                       arolfes@cozen.com

                                                       Attorneys for
                                                       Union Pacific Railroad Company

9

## CERTIFICATE OF SERVICE

I, Matthew DiCianni, hereby certify that on this 7th day of December 2021, I caused a true and correct copy of the foregoing Union Pacific Railroad Company's Sur-Reply Brief in Opposition to Defendants' Motions for Preliminary Injunction to be served upon all counsel of record via the Court's electronic filing system.

*/s/ Matthew DiCianni*
Matthew DiCianni

LEGAL\55384191\2